UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-CV-00452 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

In January 2019, Ryan Harris was arrested at her children's school in Chicago. She has filed this lawsuit against the Chicago Board of Education, the City of Chicago, and school security guard Michael Dunlap, alleging violations of her and her children's constitutional rights.[1] *See* R. 2, Complaint.[2] Dunlap and the Board have both been dismissed from the case after reaching settlement agreements with Harris. *See* R. 45. The City of Chicago has filed a motion to dismiss Harris's remaining claims, which are asserted solely on her own behalf (not her children's). *See* R. 18, Def. Mot. Dismiss. For the reasons discussed in the Opinion, the City's motion is granted, and Harris's claims are dismissed. But the dismissal is without prejudice for now, and Harris may file an amended complaint by April 20, 2021, if she believes that she can fix the defects in the original complaint.

---

[1]This Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331.
[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Ryan Harris is the mother of two children who, in January 2019, were enrolled in the fifth and sixth grades at Ludwig van Beethoven Elementary School in Chicago. Compl. ¶¶ 4, 15–16. Beethoven School offers its students free bus-fare cards (also called "bus slips") to make it easier for them to get to school. *Id.* ¶ 14. Harris's children relied on this program. *Id.* ¶ 17. She alleges that throughout their enrollment, Beethoven School's staff, administrators, and volunteers repeatedly refused to give them enough bus slips for their transportation needs. *Id.* ¶ 18. This case has its origins in a confrontation over one such refusal.

On the morning of January 22, 2019, Harris dropped off her children at Beethoven School. Compl. ¶ 20. Then she asked the school clerk, Gustavo Del Real, for more bus slips, because her children did not have enough. *Id.* ¶¶ 10, 20. Del Real refused to give her enough slips for a full week, saying her children did not need them because they did not attend regularly. *Id.* ¶ 21. Harris and Del Real argued, and Harris became "visibly upset" and left the room. *Id.* ¶ 22. In the school hallway, Harris encountered Beethoven School security guard Michael Dunlap. *Id.* ¶¶ 11, 23. Dunlap "physically grabbed Ms. Harris and threw her out the door of the Beethoven School and broke [her] necklace during the attack." *Id.* ¶ 24. According to Harris, Beethoven School security cameras captured at least some part of Dunlap's "attack" on video. *Id.* ¶ 25.

2

Harris called the Chicago Police Department to report the incident. Compl. ¶ 27. After some unspecified amount of time, two CPD officers arrived on the scene. *Id.* ¶ 28. Harris, who was still standing outside the school, told the officers that she had had a verbal argument with Del Real and then been attacked and removed from the school by Dunlap. *Id.* ¶ 29. The officers told Harris to wait outside while they gathered more information inside the school. *Id.* ¶ 30. Harris alleges that, in the school, Del Real told the officers that he had denied Harris's request for bus slips and asked school security to escort Harris out of the building. *Id.* ¶ 32. After speaking with Del Real, the officers spoke with Dunlap. *Id.* ¶ 33. Dunlap told them that while he was escorting Harris out of the school, she resisted leaving and threatened, "this is why you going to get you're a\*\* beat too," and hit Dunlap "in the face with a closed fist." *Id.* The CPD officers then spoke with another Beethoven School parent, Irene Mathis, who told them she had seen Harris strike Dunlap. *Id.* ¶ 35. According to Harris, Mathis had not witnessed Harris and Dunlap's interaction, and Mathis had a preexisting enmity with Harris. *Id.* ¶¶ 36–37.

The CPD officers arrested Harris for misdemeanor battery. Compl. ¶ 40. Harris claims that the officers ignored a key piece of evidence: "Prior to arresting Plaintiff, Ms. Harris, CPD Officers had received the Beethoven School video surveillance for January 22, 2019 and photographs and inventoried the video footage and photographs on January 22, 2019, the date Plaintiff, Ms. Harris was arrested." *Id.* ¶ 47. She alleges that this video surveillance contradicts Dunlap's version of events and

reveals him to be the aggressor in the encounter. *Id.* ¶¶ 43–46, 48–49. The charges against Harris were dropped in June 2019. *Id.* ¶ 42.

Without describing any other specific incidents, Harris alleges that, throughout her children's enrollment at Beethoven School, the bus-slip program was a source of conflict. Compl. ¶¶ 52–53. She says that whenever she or her children requested more bus slips, the requests were denied, and they faced bullying and harassment by Beethoven staff, volunteers, and parents. *Id.* ¶ 52. Beethoven School administrators, including the principal, did nothing to remedy the situation and in fact retaliated against Harris and her children for their complaints. *Id.* ¶ 53.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need include only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police*

*of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A. The City and The Board: Separate Municipalities

The Complaint betrays a basic misunderstanding about the relationship between, on the one hand, the City of Chicago, and on the other the Board of Education of the City of Chicago. Harris alleges that the Board of Education is a division of the City of Chicago. Compl. ¶ 8. Working from this faulty premise, she characterizes Beethoven School staff and administrators as agents and employees of both the Board and the City. *Id.* ¶¶ 9–11. Count One of the Complaint alleges that the City and the Board carry out various unlawful practices, including that Chicago Police officers overlook misconduct by Beethoven School security guards, who are (according to Harris) employed by both the Board and the City. *Id.* ¶¶ 54–66. In the Complaint, Harris appears at times to seek to hold the City responsible for the conduct not just of Chicago Police Departments officers, but also for the conduct of employees of the Board of Education.

As a matter of law, the City of Chicago and the Chicago Board of Education are separate municipal corporations. The Board is "a body politic and corporate" charged with overseeing education in the public schools of the City of Chicago, and capable of suing and being sued in court. 105 ILCS 5/34-2. Courts have long recognized and respected the separateness of the City and the Board. *See, e.g., Schreiner v. City of Chicago*, 92 N.E.2d. 133, 138 (Ill. 1950); *Swan v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 913, 923 (N.D. Ill. 2013); *McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887, 895 (N.D. Ill. 2013); *Fifth Third Union Tr. Co. v. Cont'l Ill. Co.*, 81 F. Supp. 350, 350 (N.D. Ill. 1948). Harris has not asked the Court to pierce the corporate veil to hold the City responsible for the Board's actions, nor did anything in the Complaint suggest that veil piercing of that kind is appropriate. Courts have repeatedly rejected attempts to treat the two municipalities as one. *See Swan,* 956 F. Supp. 2d. at 925; *McDaniel*, 956 F. Supp. 2d. at 900.

As a matter of Illinois law, then, and in the absence of any veil-piercing allegations, the Court disregards any allegation or inference that the City is responsible for the actions of Beethoven School employees. The relevant facts and claims for this motion involve the actions of CPD officers, who are City employees, as well as alleged CPD policies and practices.

### B. *Monell* Claim

Count One of the Complaint alleges that the City is liable for causing violations of Harris's constitutional rights. Compl. ¶¶ 54–66. For the reasons discussed earlier, the Court will disregard the conclusory allegations asserting that the City is directly

6

responsible for school employees' conduct. *Id.* ¶¶ 55, 57–60. At issue are Harris's allegations that the City is responsible for harms that she suffered due to the arrest by CPD officers, and that a CPD custom or practice of failing to hold school officials accountable for wrongdoing caused the violations. *Id.* ¶¶ 56, 61–65.

There are three ways that a municipal corporation can be held liable for civil rights violations under 42 U.S.C. § 1983:

> A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.

*Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). Harris brings her claim under the second theory, that is, she alleges a widespread but unofficial custom or practice. Compl. ¶¶ 61–62, 64–66. Specifically, she contends that the Board of Education has a laundry list of impermissible policies that infringe on students' and parents' rights—and the City, in turn, has a custom in which CPD officers tacitly permit Beethoven School staff and administrators to carry out those impermissible policies. *Id.* ¶¶ 60–61. For example, the City, she alleges, permits school staff to engage in "wrongful and/or illegal acts, including unreasonable seizure, excessive force, assault, and battery." *Id.* ¶ 62. The City also does not hold school staff "accountable for their false statements and reports as well as wrongful and/or illegal acts." *Id.* ¶ 64. The City's permissiveness "encouraged, endorsed, created willful ignorance of, or otherwise promoted said wrongful acts" of Del Real and Dunlap. *Id.* ¶ 65. These pernicious policies allegedly combined to harm Harris. *Id.* ¶ 66.

7

Although there is no single definition of a widespread custom or practice for *Monell* purposes, a plaintiff must generally allege *multiple* incidents of wrongdoing. *Thomas*, 604 F.3d at 303. This requirement aims to ensure that the plaintiff has identified "a true municipal policy … not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *see also Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Courts have been wary of *Monell* claims based on single events because those claims veer close to the *respondeat superior* theory of liability, which the Supreme Court explicitly rejected in *Monell*. *Powe*, 664 F.2d at 650–51; *Monell*, 436 U.S. at 691; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).[3]

Here, the fatal flaw in the *Monell* claim is that it only describes one event: Harris's arrest by two CPD officers at Beethoven School on January 22, 2019. Compl. ¶¶ 27–40. This single event is not enough to adequately allege a municipal custom or practice. *Thomas*, 604 F.3d at 303. In Harris's response brief, she discusses the event in some detail (because she can cite to nothing else in her Complaint), but it remains only one event. R. 39, Pl. Resp. Br. at 7–8. Although she alleges that a custom, pattern, or practice led to her arrest, she offers no facts in support of this allegation. "A pleading that offers labels and conclusions or a formulaic recitation of the elements

---

[3]The Supreme Court has articulated a narrow exception to the general requirement that the plaintiff allege a pattern of repeated misconduct, beginning in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), and continuing through *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397 (1997), and *Connick v. Thompson*, 563 U.S. 51 (2011). The gist of the exception is that a single egregious violation may give rise to a *Monell* claim if the need for training to prevent such violations was obvious and the municipality ignored it. *Harris*, 489 U.S. at 390. *Harris* offered the example of failing to train police officers on constitutional limits on the use of deadly force. *Id.* Harris has not attempted to argue that her case falls under this narrow single-incident exception, and in any case, has not pled facts showing it does.

8

of a cause of action will not do …. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).[4] Naked assertions devoid of factual enhancement and formulaic recitations of the elements of a *Monell* claim are all that Harris has offered.

Harris has also invoked the "deliberate indifference" standard, arguing that municipalities may be held liable for their failure to act if that failure demonstrates deliberate indifference to the constitutional rights of affected people. Pl. Resp. Br. at 6–7. She cites *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), which first articulated the principle: "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Harris,* 489 U.S. at 389. But the deliberate indifference standard does not appear to apply to this type of case. *Harris* was a case about a city's failure to train police officers, and Ryan Harris has not alleged failure to train. The Supreme Court has already declined once to extend the deliberate indifference principle beyond the failure-to-train context. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 406–08 (1997). The Seventh Circuit has applied deliberate indifference to only one other context, in a case about allegedly unlawful municipal car-towing practices. *See Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). A footnote to *Gable* noted, however, that "[m]unicipal customs also have the force of law if

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

the customs are themselves unconstitutional," in which case no showing of deliberate indifference would be required. *Id.* at 537 n.3. Ultimately, there is no need to decide whether the deliberate indifference standard applies to the case at hand. Harris has failed to adequately allege the existence of a widespread custom or practice, so there is nothing on which to base a deliberate-indifference analysis.

To be clear, there is no heightened pleading standard for *Monell* claims. In evaluating a defendant's motion to dismiss for failure to state a claim, "a court must construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). But again, the Court need only accept Harris's *factual* allegations as true—legal conclusions are entitled to no such deference. *Ashcroft*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Harris has not alleged facts vaguely or with insufficient detail; she has simply not alleged, at all, the facts necessary to state a claim under *Monell*. This "lack of intimation of *any facts* underlying the claim justifies dismissal." *Strauss*, 760 F.2d at 767 (cleaned up) (emphasis in original). Having failed to allege that a widespread policy or custom existed, much less that City officials knew of this policy and were deliberately indifferent to the harms it caused, Harris cannot move forward on her *Monell* claim as pleaded.

### C. Unreasonable Seizure

Count Two of the Complaint purports to be a § 1983 claim against the City of Chicago for "unreasonable seizure" in violation of the Fourth Amendment. But the

10

only way a municipality can be held liable under Section 1983 is through a *Monell* claim, as discussed in detail above. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). To the extent Count Two attempts to state a claim, it can only be a repeat of the *Monell* claim in Count One, and it is dismissed for the same reasons.

### D. Probable Cause

Because Harris might still wish to file an amended complaint, the Court will briefly address the City's argument that she has failed to allege an underlying constitutional violation for her claim. *See* Def. Mot. Dismiss at 9–11. Section 1983 does not supply a substantive right on its own—it is the vehicle for bringing claims under the Constitution or other federal laws. "A cause of action under § 1983 requires a showing that the plaintiff was deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). In addition to properly alleging *Monell* liability to sue the City under Section 1983, Harris must allege a viable constitutional (or federal statutory) right. As discussed next, the original Complaint does not quite reach the mark, although this does not necessarily mean it will be impossible for Harris to address the gaps in an amended filing.

11

The City argues that the Fourth Amendment claim must fail because the CPD officers who arrested her had probable cause to do so. Def. Mot. Dismiss at 9–11.[5] "Probable cause is an absolute bar to a § 1983 claim for false arrest." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301–02 (7th Cir. 2011). If Harris proposes an amended complaint that fails to allege that the police arrested her without probable cause, it will be dismissed. The current Complaint is not specific enough in its factual allegations to adequately allege that the CPD officers lacked probable cause.

The bar is relatively low for an officer to have probable cause to make an arrest: "although it requires something more than a hunch, probable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Before making an arrest, officers must conduct a reasonable investigation of the situation, but as soon as officers have probable cause to make an arrest, then officers may stop the investigation. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301–303 (7th Cir. 2011); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("An officer … may not close his

---

[5]In the Complaint, Harris states her claims under the Fifth and Fourteenth Amendments. Compl. ¶ 68. That cannot be right. Claims challenging a wrongful arrest must be brought under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *Albright v. Oliver,* 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims") (cleaned up). But given the notice-pleading standard, this error alone would not have been enough to dismiss the Fourth Amendment claim, as requested by the City on page 9 of its brief, assuming the claim was supported by adequate facts. The City demonstrated that it had received adequate notice of her Fourth Amendment claim when it submitted a brief responding to it with Fourth Amendment caselaw. Def. Mot. Dismiss at 9–11.

eyes to facts that would clarify the situation, but once an officer has established probable cause, he may end his investigation"). A witness account that would seem reliable to a reasonable person can provide probable cause. *Sow*, 636 F.3d at 302; *McBride*, 576 F.3d at 707.

Harris was arrested for misdemeanor battery. Compl. ¶ 40. The statute for this offense reads: "A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). If the police officers acquired a reasonable belief that Harris had made physical contact "of an insulting or provoking nature" with Dunlap, then they had probable cause to arrest her under the statute without investigating the situation further. Both Dunlap and another Beethoven School parent, Irene Mathis, told the CPD officers that Harris had hit Dunlap in the face. Compl. ¶¶ 33, 35. Harris does not allege facts that would have led the officers to question either Del Real's or Mathis's credibility.[6]

Harris argues that the officers who arrested her should have first watched Beethoven School's surveillance footage, which allegedly would have shown her as the victim, not the aggressor, in her interaction with Dunlap. Compl. ¶¶ 25, 38, 43, 47–49. But what areas of the school did the footage show? Did the cameras fully capture Harris and Dunlap's interaction? When did the officers "receive" and "inventory" the video footage and photographs as alleged in Paragraph 47 of her Complaint? Harris's

---

[6]Harris alleges that Mathis was not in the hallway during the altercation with Dunlap, and that Mathis had previously attacked Harris, facts which, if true, could undermine her credibility as a witness. Compl. ¶¶ 36–37. But she does not allege that the *officers* knew these facts or even that she had told the officers those facts.

13

current pleading leaves these questions unanswered. Given that two witnesses told CPD officers that Harris had struck Dunlap, Harris will need to plead more facts if she hopes to move forward with an amended complaint. If she can allege that the police officers knew that they could watch the video, and knew it would clarify what happened, then she may be able to demonstrate that the officers lacked probable cause to arrest her. If she has the video footage itself, then it should be submitted to the Court to support her account.[7]

Of course, even if Harris can adequately allege that the officers lacked probable cause, she will still need to allege facts that support a claim that the City is liable under *Monell*. For some reason, Harris did not sue the individual officers when she filed this complaint, and it might now be too late to add them. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (the statute of limitations for a Section 1983 claim is "that which the State provides for personal-injury torts"); 735 ILCS 5/13-202 (statute of limitations for personal injury torts in Illinois is two years).

### IV. Conclusion

The City of Chicago's motion to dismiss is granted, and Harris's claims against the City are dismissed for failure to state a claim upon which relief can be granted. For now, the dismissal is without prejudice. Harris may file an amended complaint by April 16, 2021, if she wishes to try to fix the defects in the original pleading. If she

---

[7]The Complaint refers a few times to her "forceful ejection" from Beethoven School. Compl. ¶¶ 23, 70, 71. If Harris wishes to make an excessive-force claim under the Fourth Amendment as well as a false-arrest claim, then again she will need to allege more facts to support the additional claim. She should remember, however, that the Beethoven School security guard is not an agent or employee of the City, but only of the Board of Education. *See supra* § III.A.

14

does not file an amended complaint by that deadline, then the dismissal will convert to a dismissal with prejudice and final judgment will be entered. The tracking status hearing of April 9, 2021, is reset to April 23, 2021, at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2021